IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| RICHARD HOFFMAN and DEAN MANTERNACH, on behalf of themselves, Individually and on behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>THARALDSON MOTELS INC. EMPLOYEE STOCK OWNERSHIP PLAN, THE ESOP COMMITTEE OF THARALDSON MOTELS INC. EMPLOYEE STOCK OWNERSHIP PLAN, GARY D. THARALDSON, RICHARD D. LARSON, DOUGLAS DOBMEIER, NEIL LARSON AND DALE BELING,<br><br>                Defendants. | **MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS**<br><br>Civil No. 3:08-cv-109 |

      Before the Court is a Motion to Dismiss under Rule 12(b)(6), Fed. R. Civ. P., filed by Defendants Tharaldson Motels Inc. Employee Stock Ownership Plan, The ESOP Committee of Tharaldson Motels Inc. Employee Stock Ownership Plan, Richard D. Larson, Douglas Dobmeier, Neil Larson, and Dale Beling (Doc. #30). Defendant Gary D. Tharaldson has also moved to dismiss and joins in the arguments of the other Defendants (Doc. #28, 29). Plaintiffs Richard Hoffman and Dean Manternach have filed a brief in opposition to the motion (Doc. #34). The Court has considered the arguments of the parties, as well as the allegations in Plaintiffs' First Amended Complaint (Doc. #24), and now issues this memorandum opinion and order.

1

## SUMMARY OF DECISION

The 2006 Amendments to the Tharaldson Motels Inc. Stock Ownership Plan were permitted under the terms of the Plan and ERISA and not a violation of the Defendants' fiduciary duty. Thus, Plaintiffs Richard Hoffman and Dean Manternich cannot state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

The following facts are taken as true from the Plaintiffs' First Amended Complaint (Doc.# 24) or the ESOP Plan Document (Doc. #31). Tharaldson Motels, Inc. (TMI) is a privately held corporation in the hotel development and operation business in thirty-five states. TMI has several operating subsidiaries and affiliated companies. Neither TMI nor any of its subsidiaries is named as a party to this action. Tharaldson Property Management, Inc. (TPM) is a property management company that operates TMI. It is also not named as a party to this action.

Plaintiff Richard Hoffman resides in Racine, Wisconsin. He was an employee of TPM from 1994 until August 2008, last serving as a Regional Vice President. Plaintiff Dean Manternach resides in Sacramento, California. He too was employed by TPM from 1995 until August 2008, last serving as a Regional Vice President.

Defendant Tharaldson Motels Inc. Employee Stock Ownership Plan (TMI ESOP) is an employee pension plan as defined in 29 U.S.C. § 1002(2). It was created by action of the TMI Board of Directors in 1998. TMI ESOP provides benefits to employees of the group of entities owned by TMI. It is a defined contribution plan. Defendant The ESOP Committee of the Tharaldson Motels Inc. Employee Stock Ownership Plan (The ESOP Committee) is the administrator of the Plan. The ESOP Committee is appointed by the Board of Directors of TMI.

The ESOP Committee is the administrator of the TMI ESOP charged with the duty of interpreting the Plan and determining the administration and application of the Plan. Under the terms of the Plan, TMI retains the right to amend the Plan to the extent permitted by law.

The individual defendants are present or former employees and directors of TMI. Gary D. Tharaldson served as the President of TMI until August 2006. He was the sole trustee of the Trust established under the Plan from the inception of the Plan in 1998 until his resignation on August 29, 2006. He was the largest shareholder in TMI and remains the largest single creditor of the TMI ESOP. Plaintiffs allege that Gary D. Tharaldson continues to exercise *de facto* control over the assets of the Plan and that he therefore is a *de facto* fiduciary to the Plan, despite his resignation.

Defendant Richard D. Larson is President of TMI and has served on the TMI Board of Directors and The ESOP Committee. Defendant Douglas Dobmeier is an Executive Vice President of TMI and serves on its Board of Directors and on The ESOP Committee. Defendant Neil Larson serves on the Board of Directors of TMI and also serves on The ESOP Committee. Defendant Dale Beling serves on the Board of Directors of TMI and serves on The ESOP Committee.

When the TMI ESOP was created, Gary D. Tharaldson and his family owned the vast majority of TMI. Following the creation of the TMI ESOP in 1998, the TMI ESOP acquired 99 percent of TMI's stock. The TMI ESOP is governed by a document entitled "Tharaldson Motels, Inc. Employee Stock Ownership Plan and Trust". It was restated in full in 2002, which is the version of the Plan that is relevant to this case. The 2002 trust document is silent as to whether employees terminating employment were required to liquidate their shares and cash out of the Plan or convert their shares to a stable value fund, such as a money market account. It is undisputed, however, that prior to 2005, a Plan participant whose employment with TMI ended was permitted

by The ESOP Committee to elect either a cash distribution of their account or a re-investment in a stable value account. Plan participants whose employment terminated were not allowed to retain their Plan interest in TMI stock.

In 2005, the Plan was amended to allow Plan participants to retain their accounts in TMI stock after termination of their employment. A subsequent amendment in 2006 repealed the 2005 Amendment and essentially reinstated the policy that preexisted the 2005 Amendment. Plaintiffs allege that this change was not publicized, except to departed TMI employees, and that while they learned of the 2005 change shortly after its adoption, they had not learned of the 2006 change until 2008. According to the 2006 Amendment, any person whose employment was terminated after the 2006 Amendment must sell his shares and then must liquidate his account and take the proceeds or leave the proceeds in the Plan and convert the shares to some stable low risk money market account inside the Plan. A Plan participant would thereby lose the potential appreciation in TMI in years to come should the Plan elect to sell the shares to some third-party and pay off the notes held by Gary Tharaldson and others. Plaintiffs contend that this "multiplier" may arise if the value of TMI has increased due to the purchase and payoff of the promissory notes.

Plaintiffs seek to have the 2006 Amendment to the TMI Plan invalidated. In the alternative, they seek to enjoin the application of the Amendment to them because of the alleged failure to disclose the changes, which they contend is a breach of The ESOP Committee's fiduciary duty to the Plan participants. Plaintiffs also allege that The ESOP Committee breached its fiduciary duty to participants by failing to timely disclose the 2006 Amendment and for the Committee's failure to sell TMI to third-parties due to a conflict of interest by insisting that Gary D. Tharaldson be indemnified for potential liability in another case pending in this Court. (Hans v. Tharaldson, 3:05

cv-115). Plaintiffs claim a breach of fiduciary duty arose because of the failed sale and seek damages for the breach. Finally, Plaintiffs allege that The ESOP Committee has an inherent conflict of interest with the Plan participants, and the named defendants should be removed from the Committee.

Plaintiffs seek class certification on behalf of all TMI employees working from November 10, 2002 forward, which they contend have or will be forced to liquidate their Plan held shares upon termination of employment. The number of those class members or potential class members run into the thousands. Plaintiffs allege that 3,500 employees left TMI employment in 2009.

Defendants have moved to dismiss Plaintiffs' action under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted. In particular, Defendants assert that the amendment to the Plan in 2006 was proper and interpretation of the provision to require departing employees to either cash out of the Plan or invest in a money market account (rather than retaining shares of TMI in the Plan) and enforcement of the provision is reasonable and within the authority of the Plan Committee; the 2006 Amendments were within the discretion of TMI and the Plan Committee and not a violation of ERISA; that Plaintiffs seek to clarify rights to future speculative benefits; that Plaintiffs have failed to exhaust their administrative remedies under the Plan; and finally Defendants assert that for these reasons the First Amended Complaint fails to state a claim for relief. Defendant Gary D. Tharaldson joins in the motion of the other Defendants and seeks to dismiss the claim against him in particular due to his resignation as a trustee and the failure to allege facts showing he is a *de facto* fiduciary.

## DISCUSSION

Dismissal under Rule 12(b)(6), Fed. R. Civ. P., serves to eliminate actions which are fatally

flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006). When determining whether a complaint states a claim upon which relief can be granted under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff. Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 884-85 (8th Cir. 2008).

Although the plaintiff's complaint need not contain detailed factual allegations in order to survive a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted)). The factual allegations in the complaint, when taken as true, "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, rather than facts that are merely consistent with such a right. Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (quotation omitted).

### 2006 Plan Amendment

From its inception until 2005, Plan participants had two options at the conclusion of employment with TMI. They could either take the value of their account and cash out of the Plan or they could leave their account in the Plan in a stable value fund money market account or similar

stable investment.  In 2005, the Plan was amended to authorize those participating in the Plan to elect to keep their Plan account in TMI stock in hopes of a substantial appreciation in the price of TMI shares.  A 2006 Amendment repealed the 2005 change and in effect restored the options to those that existed prior to the 2005 Amendment.

The "anti-cutback" rule of the Employee Retirement Income Security Act of 1974 (ERISA) prohibits amendments to a retirement plan that reduce a plan participant's "accrued benefit".  Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 741 (2004).  The purpose of the provision is to protect employees' justified expectations under their retirement plan.  Wetzler v. Illinois CPA Soc. & Found. Ret. Income Plan, 586 F.3d 1053, 1059 (7th Cir. 2009).  Thus, if an employee has an accrued right to receive a benefit, a subsequent amendment that reduces or eliminates an "optional form of the benefit violates the anti-cutback provisions of ERISA."  Id.  While an "optional form of the benefit is not defined in ERISA, and while its meaning is obscure, it is generally a benefit that involves the right of a plan participant to choose the way in which his payments under a plan will be made or applied."  Id.  It would appear that the change in the Plan in 2006 resulted in a change in the way payments under the Plan could be made or applied and is therefore a "cut-back".

The IRS has, however, created a safe harbor by a duly promulgated regulation allowing plans to be amended to eliminate some alternative forms in which an account balance can be paid under certain circumstances.  65 FR 53901-01 (2000).  Under the rules, "optional forms of benefit" exist if "a distribution alternative is not payable on substantially the same terms as another distribution alternative."  26 C.F.R. § 1.411(d)-4(b).  However, the section goes on to provide:

> The following benefits are examples of items that are not section (d)(6) protected benefits:
> \* \* \*
> (7)     The right to a particular form of investment (e.g. investment in

7

> employer stock or securities or investment in certain types of securities, commercial paper, or other investment media); . . .

26 C.F.R. § 1.411(d)-4(d)(7).  ERISA does not mandate that an employer establish a benefit plan and it does not mandate what benefits an employer chooses to provide, but once a promise has been made, the anti-cutback rule prevents a reduction in an accrued benefit.  <u>Heinz</u>, 541 U.S. at 743.  Nevertheless, an employer offering a plan which provides a participant upon termination "may provide for a single sum distribution in employer stock may modify the plan to provide the equivalent distribution in cash without violation of the anti-cutback provisions."   26 C.F.R. § 1.411(d)-4. (April 1, 2009 edition, p. 827, Example 3).

This is supported by the comments at the time the regulations were under consideration by the Department of the Treasury.  65 FR 53901-01 (2000).  The comments provide that the code treats a plan as not satisfying the "anti-cutback" provision if the accrued benefit of a plan participant is decreased by a plan amendment.  An elimination of an "optional form of benefit is treated as reducing accrued benefits."  However, the comments go on to note: "it has become easier for individual to replicate the various payment choices available from qualified plans through other means.  The vast majority of participants in defined contribution plans who are given the choice of distribution forms that include a single-sum distribution elect the single-sum distribution."  Moreover, requiring "a plan to continue to offer all existing payment options often imposes significant administrative burdens that are disproportionate to any corresponding benefit to [plan] participants."

The comments also provide: "After considering these comments regarding the desirability of requiring the retention of an extended payment form, and in light of [plan] participants' [ability] to replicate any extended form [of investment] that a defined contribution plan may offer by rolling

a single-sum distribution to an IRA, the IRS and the Treasury Department have determined that any advantages of requiring the retention of an extended payment form are outweighed by the countervailing considerations."

In the case before the Court, Plaintiffs are free to take their single-sum distribution and roll it into an IRA. They may then make whatever self directed investment decision with their own risk comfort level without burdening the Plan with the cost of providing the particular option they choose, that is holding company stock and remaining in the Plan. ERISA anti-cutback provisions protect against erosion of accrued benefits determined under a plan, not benefits expected but not accrued. Campbell v. BankBoston, N.A., 327 F.3d 1, 8 (1st Cir. 2003). The expectation of the Plaintiffs, that the TMI stock would increase in value should TMI be sold is not an accrued benefit, but rather an expectation not covered by the anti-cutback rule. The 2006 Amendment is permitted by law and the cash out option to departing employees protected their accrued benefits under the Plan.

**Fiduciary Status**

Plaintiffs allege that the individual defendants have violated their fiduciary duty to Plan participants in violation of 29 U.S.C. § 1024. The alleged breach of fiduciary duty complained of was the adoption and failure to disclose the 2006 Amendment that eliminated the right of a terminated employee to retain his interest in the Plan in TMI shares. It is well-settled that the actions by an employer may be either settlor functions taken in the capacity as employer or fiduciary duties to plan participants. Beck v. PACE Int'l Union, 551 U.S. 96, 101-02 (2007). Decisions regarding the form or structure of a plan are settlor functions, not fiduciary in nature. Id.

A decision to limit plan participants to a safe money market investment in the Plan makes

sense from an employer perspective. The holding of shares by present employees motivates the employees to maximize their efforts to promote company profitability. Their efforts should not go to increase the value of shares held by departed employees whose efforts are not increasing the value of the shares but are speculating on the increase in the value of the shares. As long as the Plan protects the accrued benefits of the Plan participants by giving them a single-sum payout distribution alternative, changes in the form and structure of the Plan by TMI do not give rise to a breach of fiduciary duty claim.

"The fiduciary duty imposed by ERISA is generally applied to the management of the plan assets." Porto v. Armco, Inc., 825 F.2d 1274, 1276 (8th Cir. 1987). Common law principles provide the basis for the duty which prohibit the use of plan assets for the benefit of a party other than the plan. Id. The statutory duty to disclose information (including amendments to the plan) is dealt with separately by ERISA. Id. The Court, therefore, concludes that the alleged failure to notify Plaintiffs of the 2006 Plan Amendment did not violate Defendants' fiduciary duty to Plaintiffs.

## DECISION

For all the foregoing reasons, Defendants' Motions to Dismiss under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim (Doc. #28, 30) are hereby **GRANTED**; Plaintiffs' Motion for a Preliminary Injunction and a Hearing (Doc. #46, 71) are **DENIED** as **MOOT**; and this action is **DISMISSED** with prejudice.

**IT IS SO ORDERED.  LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 26th day of February, 2010.

      /s/   Ralph R. Erickson
Ralph R. Erickson, Chief Judge
United States District Court